IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
                                 :
BARBARA GENNELL
                                 :

     v.                          :  Civil Action No. DKC 2004-0441

                                 :

DENNY'S CORPORATION[1], et al.  :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution is the motion of Defendant Denny's, Inc., to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), or, alternatively, for summary judgment pursuant to Fed.R.Civ.P. 56 (paper no. 11). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court grants Defendant's motion for summary judgment. Furthermore, the claims against Defendant John Doe will be dismissed. The time for moving for leave to amend to name a party is long passed and Plaintiff has not sought to name the manager.

As will be seen, Plaintiff and her companions received disappointingly slow and otherwise inadequate service at Defendant's restaurant, which Plaintiff attributes to racial discrimination. Some years ago, the restaurant chain settled nationwide class actions alleging racial discrimination in

---

[1] Defendant points out that the correct corporate name is Denny's, Inc.

service by, in part, implementing a broad based plan for training employees and monitoring performance. *See Dyson v. Denny's Inc.*, C.A. No. DKC-93-1503 (D.Md. Jan 23, 2001). In finally dismissing that action in 2001, the court noted the plaintiff parties' view that "over the last six years the Company has performed its obligations under this Consent Decree, and a similar Consent Decree in [*Ridgeway v. Denny's, Inc.*, Case No. C 93-20202 JW (N.D.Cal.)], in a highly commendable and exemplary manner, and has repeatedly gone beyond the strict requirements of the Decrees to achieve the broader purposes of the settlements." *Dyson*, paper no. 98 (Final Order), at 2. Nevertheless, within a few months of dismissal of those actions, Plaintiff claims that employees at a Denny's restaurant in Gaithersburg, Maryland discriminated against her based on race.

## I.  Background

The following facts are those presented by, or, where disputed, in the light most favorable to, Plaintiff Barbara Gennell.   On July 20, 2001, Plaintiff, an African-American female, went with either five or six other people[2] for dinner to

---

[2]  Plaintiff alleges in her complaint that she was "accompanied by five other persons," paper no. 1, at ¶ 5, but later recalls a seventh member of her party, *see* paper no. 11, ex. I (excerpt of Deposition of Barbara Gennell at 80:9-11). One member of her group is Hispanic.  The others are Caucasian.
(continued...)

a Denny's Restaurant in Gaithersburg, Maryland.  After they were seated and placed their orders, Plaintiff's party waited an hour to be served.  During this time, some other patrons, including Caucasians, were seated, had their orders taken, and were served their meals within fifteen to twenty minutes.  When members of Plaintiff's party were finally served, the order was not filled properly.  When Plaintiff complained, both their server and the restaurant manager were unresponsive, rude and hostile. Plaintiff's party got up to leave, not having paid.  The manager followed Plaintiff into the parking lot, disparaging her and threatening to call the police because the party had not paid for their meals.

Plaintiff's complaint alleges discrimination in public accommodations in violation of 42 U.S.C. § 2000a ("Title II") (Count I); race discrimination in violation of 42 U.S.C. § 1981 (Count II); *respondeat superior* negligence, negligent hiring and retention, negligent supervision and negligent entrustment (Count III); and intentional infliction of emotional distress (Count IV).  Plaintiff seeks, in total, $1,250,000 in compensatory damages, $4,000,000 in punitive damages, plus attorney's fees, costs, and pre- and post-judgment interest.

---

[2](...continued)
*See* paper no. 11, ex. K (Plaintiff's Answers to Interrogatories.)

Discovery has been completed.  Defendant now moves to dismiss, or, alternatively, for summary judgment.

## II.  Standard of Review

A court considers only the pleadings when deciding a Rule 12(b)(6) motion.  However, where the parties present matters outside of the pleadings and the court considers those matters, as here, the motion is treated as one for summary judgment.  *See* Fed. R. Civ. P. 12(b); *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F.Supp.2d 551, 556 (D.Md. 2003).

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1987).  The moving party bears the burden of showing that there is no genuine issue

4

as to any material fact and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of South Carolina v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See U.S. v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be

"sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III. Analysis

### A.   Discrimination in Public Accommodations

Plaintiff first contends she was denied equal enjoyment of the services at Defendant's restaurant on the basis of her race in violation of 42 U.S.C. § 2000a(a), which guarantees "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." Plaintiff requests compensatory and punitive damages, but not injunctive relief.  Damages, however, are not available under § 2000a; "[o]nly injunctive and declaratory relief (and attorney's fees) may be awarded under Title II." *Evans v. Holiday Inns,* 951 F.Supp. 85, 86 n.2 (D.Md. 1997) (citing *Newman v. Piggie Park Ent., Inc.,* 390 U.S. 400 (1968)).  Accordingly, Count I will be dismissed.

**B.    Section 1981**

Plaintiff next contends her rights were violated under 42 U.S.C. § 1981, which protects against racial discrimination in the making and enforcement of private contracts, including the contractual relationship that arises between proprietor and customer in a restaurant setting.  *See Callwood v. Dave & Buster's, Inc.,* 98 F.Supp.2d 694, 702-03 (D.Md. 2000) (citing cases).  Judge Davis summarized:

> In the restaurant context, section 1981 has been read to protect against the discriminatory denial of "the accouterments that are ordinarily provided with a restaurant meal . . . ." [*McCaleb v. Pizza Hut of America, Inc.,* 28 F.Supp.2d 1043, 1048 (N.D.Ill. 1998)]. Put another way, "the contract formed between a restaurant and a customer does include more than just the food served," in that the experience "includes being served in an atmosphere which a reasonable person would expect in the chosen place." *Charity v. Denny's, Inc.,* 1999 U.S. Dist. LEXIS 11462, 1999 WL 544687, at *3 (E.D.La., July 26, 1999) (citing, *inter alia, McCaleb,* 28 F.Supp.2d at 1048).

> The Fourth Circuit, like most courts, has long held that, in the employment context, the elements of a claim under section 1981 are largely the same as those for a claim of race discrimination under Title VII of the Civil Rights Act of 1964, see *Gairola v. Commonwealth of Virginia Department of General Services,* 753 F.2d 1281, 1285 (4th Cir. 1985); *Abasiekong v. City of Shelby,* 744 F.2d 1055, 1058 (4th Cir. 1984).  Indeed, the Court has indicated that the well-known burden-shifting scheme established for Title VII claims by *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), and refined in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981), is generally appropriate whenever a claim

7

> requiring proof of intentional discrimination is
> based, as in the cases at bar, on indirect or
> circumstantial evidence. *See Mullen v. Princess Anne
> Volunteer Fire Co.,* 853 F.2d 1130, 1136 (4th Cir.
> 1988). *See also Evans,* 951 F.Supp. at 89 (citing *Cook
> v. CSX Trans. Corp.,* 988 F.2d 507, 511 (4th Cir.
> 1993)).

*Callwood,* 98 F.Supp.2d at 703-04.  The *McDonnell-Douglas* burden

shifting scheme is familiar:  If, as here, a plaintiff cannot

provide direct evidence of discrimination, but relies only on

circumstantial evidence, she must first make a *prima facie* case

of intentional discrimination.  *See McDonnell-Douglas,* 411 U.S.

at 802.  If she does so, the burden of production then shifts to

the defendant to present a legitimate, nondiscriminatory reason

for the adverse action alleged; if the defendant succeeds, that

will rebut the presumption of discrimination raised by the

plaintiff's *prima facie* case.   *See Stokes v. Westinghouse

Savannah River Co.,* 206 F.3d 420, 429 (4th Cir. 2000) (citing

*Burdine,* 450 U.S. at 255 n.10).  The plaintiff then must "prove

by a preponderance of the evidence that the legitimate reasons

offered by the defendant were not its true reasons, but were a

pretext for discrimination." *Burdine,* 450 U.S. at 253.  In the

end, "[t]he plaintiff always bears the ultimate burden of

proving [intentional discrimination] against her."   *Evans v.

Tech. Applications & Serv. Co.,* 80 F.3d 954, 959 (4th Cir. 1996)

(citing *Burdine*, 450 U.S. at 253).   As the Fourth Circuit has
recently observed:

> [T]he "prima facie case," a mechanism peculiar to the
> pretext framework, is never by itself sufficient to
> permit a plaintiff to escape an adverse summary
> judgment ruling except in the rare instance when an
> "employer is silent in the face of the presumption" it
> raises.  See *Burdine*, 450 U.S. at 254.

*Diamond v. Colonial Life*, ___ F.3d ___ (4th Cir. 2005), 2005
U.S.App. LEXIS 15151 at *19, 2005 WL 1713188 at *6 (July 25,
2005).

In *Callwood*, Judge Davis formulated a test for establishing
a *prima facie* case of section 1981 discrimination in a
restaurant setting, holding a plaintiff must show that (1) she
is a member of a protected class; (2) she made herself available
to receive and pay for services ordinarily provided by the
defendant to all members of the public in the manner in which
they are ordinarily provided; and (3) she did not enjoy the
privileges and benefits of the contracted for experience under
factual circumstances which rationally support an inference of
unlawful discrimination in that (a) she was deprived of services
while similarly situated persons outside the protected class
were not deprived of those services, and/or (b) she received
services in a markedly hostile manner and in a manner which a
reasonable person would find objectively unreasonable.

*Callwood,* 98 F.Supp.2d at 707 (citing *Edwards & Assoc., Inc.,* 84 F.Supp.2d at 1191-92); *see also Murrell v. Ocean Mecca Motel, Inc.,* 262 F.3d 253, 257-58 (4ᵗʰ Cir. 2001) (noting with approval the *Callwood* formulation).   The court, however, also remains mindful that the *McDonnell-Douglas* framework is not meant to be applied in a "rigid, mechanized or ritualistic" manner, *Furnco. Constr. Corp. v. Waters,* 438 U.S. 567, 577 (1978).   Rather, it is "merely a means to fine-tune the presentation of proof and, more importantly, to sharpen the focus on the ultimate question -- whether the plaintiff successfully demonstrated that the defendant intentionally discriminated against her."   *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio,* 53 F.3d 55, 59 (4ᵗʰ Cir. 1995) (citing cases).

Here, Plaintiff has not done so.   Viewing the facts in the light most favorable to Plaintiff, her party waited an hour for service while some other patrons, "quite a few" but not all of them Caucasian, were served within 15-20 minutes of arriving; when the order finally arrived, it was incorrect and incomplete; the manager "insisted that we pay for food that we did not receive or eat;" Plaintiff and her party did not pay; and the manager followed them into the parking lot, demanding that they pay and threatening to call the police.

With respect to Plaintiff's primary contention, that she received unreasonably slow service, she arguably has made a *prima facie* case of discrimination by stating in her sworn deposition that, after ordering, her party waited an hour to be served while other Caucasian patrons ordered and received their food within 15-20 minutes.  Under *McDonnell-Douglas*, the burden then shifts to Defendant to show a legitimate, non-discriminatory reason for the adverse treatment.  Defendant, in answers to Plaintiff's interrogatories, states that Ms. Darlene Dukes, a server that night, "recalled that at the time of the incident there was only one cook on duty and the kitchen was backed up.  She recalled that all of the patrons had to wait a long time for their meals at the time the Gennell party was in the restaurant . . . ."  Paper no. 14, ex. 5, at 4.  Defendant's corporate representative also testified in deposition that Plaintiff and her party "received their orders just as timely as other patrons who were of a different race than they were" and that "other people waited an hour . . . for their food" because the restaurant "had a very weak staff that evening."  Paper no. 14, ex. 4, Deposition of Christine Klingaman, at 118.  Defendant also notes that Plaintiff admitted both that she could not see several patrons who were seated in a part of the restaurant not visible to her, *see* paper no. 11, ex. C (Deposition of

Plaintiff), at 53, and that she could not recall whether there were any other African-Americans in the part of the restaurant where she was seated, *see id.*, ex. D, at 57.  All these facts together provide Defendant a legitimate, non-discriminatory explanation for the service delay.

The burden then shifts back to Plaintiff to show that Defendant's explanation is pretextual, but Plaintiff cannot do so.  Plaintiff states that "Defendant provides no evidence to support their contention that it was a shortage in the kitchen that was the cause of the delay in [P]laintiff's correct food order being delivered to her table in a reasonable period of time," but in fact Klingaman's testimony and Ms. Dukes' recollection as related in Defendant's answers to interrogatories are the only evidence in the record either to support or to deny that proposition, and no evidence suggests either account is inaccurate.  Plaintiff also argues in response that "a shortage in the kitchen does not explain why [Plaintiff] was forced to wait an hour to have a waiter appear at her table to take her order," paper no. 14, at 9, but while this assertion appears in Plaintiff's deposition, *see* paper no. 11, ex. A, at 41, no such allegation appears either in Plaintiff's complaint, in Plaintiff's answers to Defendant's interrogatories, or in Plaintiff's supplemental answers to same.  *See* Paper no. 1, at

¶ 6-7 ("The group was seated and their orders taken.  Defendant took approximately one hour before serving plaintiff and her party."); paper no. 11, ex. K (Plaintiff's Answers to Interrogatories), no. 22 ("Interrogatory No. 22: State any other facts in support of your allegations that you received disparate treatment or disparate service . . . .  Answer no. 22: . . . see the Complaint."); paper no. 11, ex. L (Plaintiff's Supplemental Answers to Interrogatories), no. 22 ("Me and my party were seated and after a while our orders were taken.  It was approximately one hour before the food was served.").  Plaintiff cannot now use a new allegation, not included in her complaint or in her answers to Defendant's broad interrogatory, to support her inference of intentional discrimination with respect to the instant allegation.

Having failed to show that Defendant's explanation for slow service was pretextual, that contention cannot survive summary judgment.  Plaintiff's remaining allegations -- that her order was not properly filled, that the server and manager were discourteous, and that, when Plaintiff's party left without paying, the manager followed them out, demanding payment and threatening to call the police -- fail even to survive the *prima facie* test in the first step of the *McDonnell-Douglas* scheme, as Plaintiff has not even alleged, let alone shown, that other

similarly situated, non-African-American patrons had orders that
were incorrectly filled and then corrected, nor that any other
party, of any race, attempted to leave the restaurant without
paying and was not followed or threatened with a call to the
police.   Accordingly, summary judgment will be granted to
Defendant on Count II.

### C.   Negligence (Respondeat Superior)

Third, Plaintiff contends that Defendant was negligent in
the hiring, retention, and supervision of its employees at the
restaurant in question.

To prove negligence under a theory of *respondeat superior*,
Plaintiff must show that Defendant's employee committed a
tortious act against Plaintiff, that Defendant had and breached
a duty to Plaintiff, and that Plaintiff suffered damages as a
result of the breach.  *See Penhollow v. Bd. of Comm'rs for Cecil
County,* 695 A.2d 1268, 1284 (Md.Ct.Spec.App. 1997) (citing
*Cramer v. Housing Opportunities Comm'n,* 501 A.2d 35 (Md. 1985)).
Here, the allegedly tortious act is Defendant's intentional
discrimination, but as explained *supra* at III.B, the court finds
no intentional discrimination.  Likewise, the only duty asserted
by Plaintiff is the "duty to [P]laintiff to provide her with a
dining experience commensurate with the White patrons that
[P]laintiff observed during her time in the restaurant," and the

14

only breach asserted is that Defendant "breached the above named duty when the servants, employees and/or agents of said corporation forced [P]laintiff to endure extreme embarrassment [sic] and humiliation, due to their discriminating treatment of [P]laintiff . . . ."  Paper no. 1, at ¶ 24-25.  The court assumes, though Plaintiff is never explicit on this point, that the legal duty breached is that of affording customers an experience that does not include intentional racial discrimination in violation of § 1981; but while "[i]t is well-established that an employer may be liable under *respondeat superior* theory for its employees' violations of § 1981," *Williams v. Cloverleaf Farms Dairy, Inc.,* 78 F.Supp.2d 479, 485 (D.Md. 1999) (citing cases), Plaintiff has failed to show any breach of that duty because Plaintiff cannot show that Defendant intentionally discriminated against her.  Therefore summary judgment is appropriate on Count III.

### D.  Intentional Infliction of Emotional Distress

Finally, Plaintiff contends that Defendant's conduct constituted intentional infliction of emotional distress. Plaintiff must show that Defendant's conduct was (1) intentional or reckless, (2) "extreme and outrageous," and (3) causally connected to Plaintiff's emotional distress, and (4) the distress caused must be "severe."  *See Penhollow*, 695 A.2d at

15

1285 (citing *Harris v. Jones,* 380 A.2d 611 (Md. 1977)).  To recover, "there must be a 'severely disabling emotional response,' so acute that 'no reasonable man could be expected to endure it.'"  *Moniodis v. Cook,* 494 A.2d 212, 220 (Md.Ct.Spec.App. 1985) (citing *Harris,* 380 A.2d at 616) (internal quotation marks omitted).  Plaintiff must also show that the behavior was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris,* 380 A.2d at 614.  Moreover, "liability does not extend 'to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Moniodis,* 494 A.2d at 220 (citing *Harris,* 380 A.2d at 614) (internal quotation marks omitted).

Here, because Plaintiff cannot show that Defendant intentionally discriminated, Plaintiff is left to prove that, even if not discriminatory, the behavior of Defendant's employees was either intentional or reckless and was "extreme and outrageous," and that Defendant suffered "severe" distress as a result.  This Plaintiff cannot do.  At worst, the employees were slow to serve her party and then did so incorrectly, did not correct the improperly filled order, were rude, and argued with her in the restaurant and in the parking lot about her

failure to pay the bill.  Even assuming *arguendo* that Plaintiff can show that the employees' conduct was intentional or reckless, the poor service and rude conduct described by Plaintiff clearly do not exceed "all possible bounds of decency," and, indeed, constitute the "mere insults [and] indignities" that are not actionable.  Furthermore, Plaintiff has not shown that she suffered any emotional distress beyond temporary embarrassment and humiliation, let alone anything "severely disabling."  Summary judgment is therefore appropriate on Count IV.

## IV.  Conclusion

For the reasons stated, summary judgment will be granted. A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

July 26, 2005